## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

BERTHA SHANKLE,        )
                             )
    Plaintiff,         )
                             )
v.                      )    Case No.: 5:16-cv-01623-SGC
                             )
SOCIAL SECURITY       )
ADMINISTRATION,       )
COMMISSIONER,        )
                             )
    Defendant.       )

## <u>MEMORANDUM OPINION</u>[1]

Plaintiff Bertha Shankle appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"") and Disability Insurance Benefits ("DIB"). (Doc. 1). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was forty-eight at the time of the Administrative Law Judge's ("ALJ's") decision. (*See* R. 21, 23). Plaintiff did not attend high school, never

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 12).

received her GED, and speaks English. (R. 32). Plaintiff's past work experience includes work as a nurse's assistant. (R. 143). Plaintiff alleged disability due to problems with her neck, right shoulder, and back, as well as mental problems. (R. 151).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. 11). At step two, the ALJ found Plaintiff suffered from the following severe impairments: cervical and lumbar degenerative disc disease ("DDD"); major depressive disorder; anxiety disorder NOS; and pain disorder. (R. 11-12).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed

impairments. (R. 12-13). Before proceeding to step four, the ALJ determined

Plaintiff had the RFC to perform light work as defined in 20 CFR § and 416.967(b)

with the following limitations:

> [T]he claimant can occasionally climb, balance, stoop, kneel, crouch,
> and crawl. The claimant can occasionally perform overhead work
> with the right upper extremity. The claimant can tolerate no exposure
> to heights, moving machinery, and driving. The claimant can
> understand, remember, and carry out short and simple instructions and
> make judgments on simple work-related decisions. The claimant can
> tolerate occasional contact with the public.

(R. 13).

At step four, the ALJ determined Plaintiff had no past relevant work. (R.

21). Because the Plaintiff's RFC did not allow for the full range of light work, the

ALJ relied on the testimony of a vocational expert ("VE") in finding a significant

number of jobs in the national economy Plaintiff can perform. (R. 22). The ALJ

concluded by finding Plaintiff was not disabled. (R. 22-23).

## II.    STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a

narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the

Commissioner, and (2) whether the correct legal standards were applied. *See Stone*

*v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v.*

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives

deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th

Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  DISCUSSION

Plaintiff argues the Commissioner's decision should be reversed and remanded because the ALJ failed to properly evaluate her testimony of disabling symptoms in light of the Eleventh Circuit's pain standard.  (Doc. 15 at 3).  In particular, Plaintiff contends the ALJ's decision is not supported by substantial evidence insofar as it discounted Plaintiff's testimony concerning the nature and severity of her symptoms.  (*Id.* at 4).  Plaintiff primarily relies on her longitudinal treatment history for both physical and psychological ailments.  (*Id.* at 5-8).  Plaintiff also takes issue with the ALJ's disagreement with the opinions of treating and examining physicians.  (*Id.* at 9-10).  The evidence and issues regarding Plaintiff's psychological and physical impairments will be discussed in turn.

### A.  **Plaintiff's Mental Impairments**[2]

Plaintiff testified she cannot sleep and cries often.  (R. 35-36).  Plaintiff further testified she suffers from frequent panic attacks; although she testified the medication helped, she estimated she has three panic attacks per week, each attack

---

[2] Because Plaintiff's brief is largely based on arguments regarding the ALJ's conclusions regarding her mental impairments, this opinion separates the different mental impairment-related arguments in separate sub-sections.  Because the Plaintiff's arguments concerning the ALJ's conclusions regarding her physical impairments is more succinct—and because the same legal framework applies to both varieties of impairments—Plaintiff's physical impairment-related arguments are discussed together in the following section.

lasting approximately thirty (30) minutes. (R. 35). Plaintiff testified her last employment, in 2013, was unsuccessful because she suffered from a "nervous breakdown" and could not return to work. (R. 33).

The record includes treatment notes from Dr. Moses Awoniyi, covering the period from 2013 through 2015, during which he saw Plaintiff on a monthly basis. (R. 266-80, 362-78). As to psychological impairments, Dr. Awoniyi's records confirm Plaintiff's consistent complaints of severe depression and/or anxiety. (*E.g.* R. 266, 280, 374). Among the medications Dr. Awoniyi prescribed Plaintiff was Xanax, which appears was intended to treat anxiety rather than pain. (*See* R. 16, 49). On August 12, 2013, Dr. Awoniyi noted Plaintiff "needs to see psychiatrist." (R. 270). On September 11, 2013, Dr. Awoniyi referred Plaintiff to psychiatry. (R. 266).

John Haney, Ph.D., performed a consultative psychological examination on October 23, 2013. (R. 287-88). Dr. Haney observed Plaintiff to be anxious, sad, and tearful but also noted she was alert, polite, cooperative, and understood the reason for the appointment. (R. 287). Plaintiff self-reported feelings of failure, panic, sadness, pain, worry, as well as problems with memory, concentration, stress tolerance, sleep, and energy; she also stated her depression began in 1986 and that she had suffered "several panic attacks" in the previous month. (R. 288). Dr. Haney found Plaintiff was: (1) oriented; (2) unable to subtract serial sevens; (3)

able to count forward by multiples of three; (4) limited in performing most simple tasks and arithmetic; and (5) able to identify abstract similarities between objects and interpret simple proverbs. (*Id.*). Dr. Haney also concluded: (1) Plaintiff's recent and remote memory were "generally intact;" (2) her intelligence was in the low average to borderline range; (3) she did not suffer from hallucinations, delusions, or psychotic symptoms; (4) her mood was sad, but her conversation was logical and goal-oriented; (5) her insight and judgment appeared limited, but she was able to manage her finances. (*Id.*). Dr. Haney noted Plaintiff's diagnoses of "Major Depressive Disorder, Recurrent, Moderate, . . . Anxiety Disorder, NOS, with panic attacks and agoraphobia, . . . [and] Pain Disorder associated with a general medical condition and psychological factors." (R. 288). Dr. Haney concluded Plaintiff's "[a]bility to function in most jobs appeared moderately to severely impaired due to physical and emotional limitations." (*Id.*).

On October 17, 2013, Plaintiff had an individual therapy session at the Mental Health Center of North Central Alabama ("MHC Alabama"), presumably on Dr. Awoniyi's referral. (R. 282). Plaintiff rated both her depression and anxiety level as 8 on an increasing 10-point scale. (*Id.*). Plaintiff continued with individual and group therapy sessions at MHC Alabama for nearly a year and a half. (*See, e.g.,* R. 282-83, 307-27, 352-61, 385). During her therapy sessions, Plaintiff variously reported poor appetite, difficulty sleeping, anxiety, and

depression. At times, Plaintiff reported her symptoms impaired her ability in social and occupational functioning. (*E.g.* R. 311). At other times, Plaintiff's counseling notes reflected Plaintiff: (1) was "content socializing with family and would like to [] do things with them more often;" and (2) had "supportive family relationships." (R. 283).

In addition to individual therapy sessions, Plaintiff was treated by Dr. James Gamble, a psychiatrist at MHC Alabama. Dr. Gamble's initial assessment, completed on July 21, 2014, noted Plaintiff suffered from "multiple psychiatric and emotional issues," the most urgent being "significant depression which meets the criteria for Major Depression." (R. 304). Plaintiff reported "her most distressing symptom [wa]s difficulty sleeping," a problem she had experienced since 1996, when her son was injured in a fire. (R. 302). Plaintiff also stated that: (1) during the previous year she experienced nightmares three or four times a week, which had recently decreased to two times per week; and (2) she lost eighteen pounds over the previous three months due to depressed appetite. (*Id.*).

Dr. Gamble's initial mental status evaluation revealed: (1) regular speech rate and tone; (2) no auditory or visual hallucinations; (3) no response to internal stimuli; (4) no delusions; (5) no loose associations or flight of ideas; and (6) frequent suicidal thoughts with no intent due to her parental responsibilities. (R. 304; *see* R. 302). Dr. Gamble also noted: (1) Plaintiff's mood was depressed: (2)

her affect was frequently tearful but "otherwise full range and appropriate;" (3) her judgment was "good;" and (4) she was oriented to person, place, and time. (R. 304). Dr. Gamble: (1) assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 30; (2) made diagnoses of "Major Depression Recurrent, Severe without Psychosis" and "Anxiety Disorder, NOS (Rule out PTSD);" and (3) prescribed Prozac to treat Plaintiff's depression. (*Id.*).

Plaintiff continued to see Dr. Gamble on a monthly basis for medication management for the next seven months, until February 2, 2015. Dr. Gamble's assessments generally reflect Plaintiff's reports of difficulty sleeping, sudden crying, poor memory and concentration, low energy, depression, and anxiety; Dr. Gamble's diagnoses remained unchanged. (R. 297, 338, 341, 344, 347, 358, 388). Additionally, Dr. Gamble's evaluations of Plaintiff's speech, mood, affect, and judgment were largely consistent with his initial assessment. Dr. Gamble did not perform another GAF assessment. As explained below, it appears Dr. Gamble's main treatment strategy was to gradually adjust Plaintiff's medication and dosages.

On Plaintiff's first follow-up appointment, Dr. Gamble discontinued Prozac due to side effects, and replaced it with Paxil. Over the following visits, Dr. Gamble steadily increased Plaintiff's Paxil dose from 5 mg to 40 mg. (R. 298, 339, 342, 345, 348, 359). On Plaintiff's last visit, Plaintiff stated the increased Paxil dosage was "helpful," and Dr. Gamble noted that, while Plaintiff had been upset

about stressful events affecting her family, "[s]he was good humored about it." (R. 388). Additionally, Dr. Gamble's final mental status examination appears to reveal an improvement in Plaintiff's mood ("[p]erhaps in the depressed range") and affect ("[f]ull range and appropriate"). (*Id.*). Finally, while Dr. Gamble had previously scheduled Plaintiff to return every four weeks, on February 2, 2015, Dr. Gamble scheduled Plaintiff's follow-up appointment for twelve weeks later. (R. 389). It appears February 2, 2015, was the last time Plaintiff saw Dr. Gamble.

Plaintiff contends the ALJ "mischaracterized the evidence regarding [her] mental illness and resulting limitations." (Doc. 15 at 9). More specifically, Plaintiff argues the ALJ improperly discounted Plaintiff's testimony regarding the severity of her mental impairments and erred in discounting the opinions of Dr. Gamble and Dr. Haney. (*Id.*). The court will first address arguments regarding the opinion testimony before moving to the ALJ's treatment of Plaintiff's testimony.

### 1. Opinion Evidence Regarding Mental Impairments

Opinions from one-time examiners are not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Meanwhile, the opinion of a claimant's treating physician is entitled to substantial or considerable weight absent a showing of good cause to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Id.* Good cause exists where a

treating physician's opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion . . . the ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016).

Turning to the opinions at issue here, Dr. Haney's opinion is not entitled to deference because he was a one-time consultative examiner. *McSwain*, 814 F.2d at 619. The ALJ found Dr. Haney's opinion—that Plaintiff's impairments moderately or severely limited her ability to work—was "overly pessimistic" and not entirely supported by his own examination findings. (R. 20). The ALJ also concluded Dr. Haney's opinion was not supported in light of the medical record; in particular, the ALJ cited the treatment notes from MHC Alabama, which revealed fairly conservative treatment and did not reflect the severe mental impairments suggested

by Dr. Haney's opinion. (*Id.*). The ALJ also noted two deficiencies in Dr. Haney's opinion which rendered it inappropriate for making an RFC determination. First, the ALJ noted Dr. Haney is a psychologist who evaluated the Plaintiff's mental— not physical—condition. However, Dr. Haney's opinion is based on Plaintiff's mental and physical condition. (*Id.*). Second, the ALJ noted Dr. Haney's opinion is conclusory and not based on a function-by-function analysis. (*Id.*). Accordingly, the ALJ afforded significant weight to Dr. Haney's opinion, but only to the extent it supported the RFC determination. (*Id.*). The ALJ explained this decision, which was supported by substantial evidence and was in accord with applicable law.

As to Dr. Gamble's opinion, the ALJ gave little weight to the GAF score of 30. (R. 21). As an initial matter, the ALJ noted GAF scores merely represent a clinician's judgment about the severity of an individual's symptoms at a particular moment in time: a snapshot as opposed to a longitudinal study. (*Id.*). This understanding of GAF scores is supported by case law. *See Thornton v. Comm'r Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015). Moreover, a GAF score is not an assessment of a claimant's ability to work. *See id.*; *Davis v Astrue*, No. 11-2542-RDP, 2012 WL 4339562, at *7 (N.D. Ala. Sept. 17, 2012). Here, the only GAF score on the record was assigned by Dr. Gamble on July 21, 2014.

The ALJ also found the evidence did not support a GAF of 30, which indicates: "Behavior is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment . . . OR inability to function in almost all areas . . . ." *DSM-IV-TR* at 34; (*See* R. 21). The ALJ was correct in noting Dr. Gamble's failure to support or explain the GAF score of 30. Dr. Gamble's initial assessment did not support this level of impairment; neither did subsequent assessments. Likewise, Dr. Gamble's conservative treatment—consisting primarily of gradually adjusting Plaintiff's medication—supports the ALJ's conclusion. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Accordingly, the ALJ applied the correct standards regarding the GAF score, and the decision to assign it little weight is supported by substantial evidence.

For the foregoing reasons, to the extent the ALJ refused to accept the entirety of Dr. Gamble's and Dr. Haney's opinions, the decisions were proper under the governing standard.

### 2. Plaintiff's Testimony Regarding Mental Impairments

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, including mental impairments, the Eleventh Circuit's pain standard requires:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other symptoms] arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other symptoms].

*Dyer*, 395 F.3d at 1210 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 960-61 (11th Cir. 2016). The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he or she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). When the credibility of a claimant's testimony is at issue, "[t]he question is not . . . whether the ALJ could have reasonably credited testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938-39 (11th Cir. 2011).

Here, the ALJ found the Plaintiff's testimony concerning the severity of her mental impairments was not consistent with the record, particularly records that were temporally proximate to her March 9, 2015 testimony. (R. 18-19). Plaintiff testified she suffered from frequent panic attacks; she estimated she had three panic attacks per week. (R. 35). Plaintiff further testified she has no social life; she stated she had no friends and all of her family lives out of state. (R. 38). The ALJ found Plaintiff's testimony regarding the frequency of panic attacks was not supported by the record. (R. 19). Review of the MCH Alabama records cited by

the ALJ support this conclusion: the records from September 2014 through February 9, 2015, are silent regarding panic attacks and show an improvement in Plaintiff's symptoms. (R. 338-61; 385-89). Next the ALJ found the Plaintiff's testimony that she had no social life and no nearby family was undermined by other portions of the record in which she reported she was content socializing with her family and had supportive family relationships. (R. 19; *see* R. 283). The relatively conservative treatment for Plaintiff's mental illness also supports the ALJ's decision and indicates it was not as limiting as Plaintiff testified— particularly where her condition appears to have improved with medication. *See* 20 C.F.R. § 416.929(c)(iv)-(v); SSR 96-7p;[3] *Wolfe*, 86 F.3d at 1078; *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016); *Harwell v. Heckler*, 735 F.2d 1292, 1293 (11th Cir. 1984).

The ALJ concluded by finding Plaintiff's impairments could reasonably be expected to cause the alleged symptoms but that her statements concerning the severity of those symptoms were not entirely credible. (R. 19). The ALJ's findings represent specific, legally acceptable reasons to support his conclusion that the objective medical record undermined the credibility of Plaintiff's subjective testimony. (R. 18-19). Moreover, the conclusions are supported by substantial evidence. As such, Plaintiff failed to meet her burden of providing

---

[3] While SSR 96-7p has since been superseded by SSR 16-3p, it remained in effect at the time the ALJ issued the instant decision. Accordingly, the ALJ appropriately applied SSR 96-7p.

sufficient evidence to support her allegations of disabling mental impairments. In short, the ALJ was not "clearly wrong" in discrediting the Plaintiff's testimony. *Werner*, 421 F. App'x at 939.

### B.    Plaintiff's Physical Impairments

Plaintiff testified she suffers from back pain on a daily basis but that her prescribed medication helped "somewhat." (R. 34). Plaintiff rated her average level of back pain as 8 on a 10-point ascending scale but testified it was often 10 out of 10. (R. 36-37). As a result of her pain, Plaintiff testified she could: (1) stand for 30 minutes at a time; (2) carry her grandson, who weighs 22 pounds, for several minutes; and (3) walk for less than one block without resting. (R. 34-37). Plaintiff further testified she spent approximately four hours each day lying down. (R. 36, 39).

The ALJ noted Plaintiff's complaints of back pain began in September 2010, following a work-place injury. However, cervical x-rays at the time were normal, and Plaintiff was released to go back to work without limitations the following month. Several months later, in January 2011, Plaintiff was involved in a car wreck. X-rays showed osteoarthritic changes with anterior osteophytes at C4-5 and C6-7 but no fracture, subluxation, or swelling. (R. 198). Plaintiff sought treatment with the Decatur Orthopaedic Clinic and was diagnosed with cervical strain. (R. 226). Plaintiff could not afford the prescribed physical therapy but

responded well to medications. (*Id.*) By March 28, 2011, Plaintiff was no longer wearing a cervical collar, had good range of motion, and reported no significant pain. (*Id.*). Plaintiff did not return for her scheduled follow-up, and it appears this was the last treatment she received from Decatur Orthopaedic Clinic. (*Id.*).

On June 16, 2013, Plaintiff saw Dr. Awoniyi, complaining of back and shoulder pain, as well as the previously-discussed anxiety and depression. (R. 280). Dr. Awoniyi prescribed Lortab 7.5 mg twice daily. (*Id.*). Plaintiff returned in July and August 2013; Dr. Awoniyi continued prescribing pain medication and ordered imaging. (R. 270-71). X-rays of Plaintiff's coccyx, sacrum, and lumbar spine were unremarkable, but mild endplate degenerative changes and small ventral osteophytes were visible in the lower cervical spine. (R. 267-69). Dr. Awoniyi refilled Plaintiff's pain medication in September 2013. (R. 266).

In October 2013, Dr. Marlin D. Gill performed a physical consultative examination at the request of the Social Security Administration. (R. 284-86). Dr. Gill recounted Plaintiff's history of neck pain beginning with her 2010 work injury and lower back pain following the 2011 accident. (R. 284). Plaintiff reported: (1) waking multiple times at night due to pain; (2) sharp neck pain with any head movement, worsening with increased activity; (3) intermittent lower back pain, requiring her to rest after excessive standing, walking, or bending; (4) lower back pain lasting days if she was overactive; (5) significant lower back pain when lifting

anything over ten to fifteen pounds; and (6) right shoulder pain caused by reaching or lifting. (*Id.*). Plaintiff reported daily activities of sleeping, light housework, shopping, and taking care of her own personal needs. (*Id.*). Plaintiff estimated she could sit or stand for a maximum of one hour and walk a maximum of one block. (*Id.*).

Dr. Gill observed Plaintiff as having a normal gait and noted she did not need assistance walking or getting on and off the examination table. (R. 285). As to Plaintiff's neck, back, and right shoulder, Dr. Gill noted Plaintiff's complaints of pain but stated they appeared "normal" and/or moved "normally." (*Id.*). Dr. Gill noted Plaintiff could "squat all the way down and come back up again" to a standing position and could walk on her tiptoes and heels. (*Id.*). Plaintiff exhibited 5/5 strength in all areas except for the right arm in which strength was 4/5. (*Id.*). Dr. Gill assessed plaintiff as having neck pain, low back pain, and right shoulder pain; he noted all imaging was normal, except for the previously-discussed degenerative changes shown in x-rays of Plaintiff's neck. (R. 286).

Plaintiff returned to Dr. Awoniyi in October 2013; he continued prescribing Lortab on her monthly visits. (R. 372-75). Dr. Awoniyi also ordered additional imaging in November 2013; x-rays of Plaintiff's lumbar spine showed "some calcification in the posterior annulus at L4-5 which protrudes into the canal slightly." (R. 291). The findings noted DDD "[could] not be excluded" and stated

MRIs might be needed. (*Id.*). Thereafter, Dr. Awoniyi began prescribing Flexeril; in September 2014, he discontinued Lortab and replaced it with Norco 10. (R. 366-75). It appears Dr. Awoniyi's treatment consisted of prescribing these medications at steady dosages. (*Id.*; *see* R. 382-83).

Dr. Awoniyi also referred Plaintiff to a spinal surgeon; she saw Dr. Joel D. Pickett on March 14, 2014. (R. 330-33). Dr. Pickett observed Plaintiff as having: (1) normal strength, muscle tone, and bulk, without evidence of weakness; (2) full range of motion without pain; (3) no pain with straight leg maneuvers; and (4) no deformity or asymmetry of the lumbosacral spine. (*Id.*). Dr. Pickett ordered x-rays, which showed good alignment throughout the lumbar spine with "mild" DDD. (*Id.*). Dr. Pickett also ordered an MRI, which showed "mild disc bulges at L4-5 and L5-S1 level with no central lateral recess or neural foraminal narrowing." (R. 334). Dr. Pickett suggested physical therapy and recommended pain management rather than surgery. (R. 332).

On February 11, 2015, Dr. Awoniyi signed a statement concerning his opinion of Plaintiff's impairments. The entirety of Dr. Awoniyi's statement is:

> The above named patient of mine has medical problems that severely decrease her functional capacity. She has problems sitting and walking for more than 4hrs. The medications she take compromises her alertness and inability to drive. In my opinion she is physically disable.

(R. 380) (errors in original).

On this record, the ALJ found the Plaintiff's testimony regarding the persistence and severity of her pain was not entirely credible. (R. 19). The ALJ also gave Dr. Awoniyi's opinion little weight. (*Id.*). Plaintiff takes issue with both of these decisions.

As to Plaintiff's testimony, the ALJ relied on multiple inconsistencies when compared to the medical record. First, although Plaintiff testified her prescribed medication helped her pain "somewhat," she estimated she could only stand for approximately 30 minutes and lays down "all the time." (R. 18-19; *see* R. 34). The ALJ found this conflicted with her statement to Dr. Gill that she could stand for up to an hour. (R. 19). The ALJ found Plaintiff's testimony that sitting was "very uncomfortabl[e]" was not supported by Dr. Pickett's generally normal examination findings. (*Id.*) Plaintiff also testified she could carry her twenty-two pound grandson despite her report to Dr. Gill that lifting anything heavier than ten to fifteen pounds caused significant pain. (*Id.*). The ALJ also noted Dr. Awoniyi's conservative treatment—consisting almost entirely of prescribing pain medication at steady doses—together with the lack of hospitalization or more aggressive treatment, undermined her testimony that her pain level was 8 out of 10 on an average day, but often was 10 out of 10. (*Id.*). The ALJ also found Plaintiff's testimony regarding her difficulty walking, bending, kneeling, and crawling were not supported by the examination findings of Dr. Gill or Dr. Pickett. (*Id.*).

Inconsistencies in the evidence provide justification for discrediting a Plaintiff's testimony of pain. *E.g. Carman v. Astrue*, 352 F. App'x 406, 408 (11th Cir. 2009). Here, the ALJ noted multiple inconsistencies between Plaintiff's testimony and the medical record. Review of the record does not reveal any evidence that would render the ALJ's decision improper. Plaintiff does not point to any specific evidence to the contrary aside from Dr. Awoniyi's opinion, discussed below. Instead, Plaintiff relies on her diagnoses and her longitudinal history of seeking treatment for her ailments. (Doc. 15 at 4-5, 10-11). It is true—as Plaintiff argues—that "a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for . . . symptoms . . . lends support to an individual's allegations of intense or persistent . . .symptoms for the purposes of judging the credibility of the individual's statements." SSR 96-7P. But again, the question here is not "whether the ALJ could have reasonably credited testimony, but whether the ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 938-39. In light of the record here, the ALJ's decision to discount Plaintiff's testimony was not clearly wrong. Moreover, while Plaintiff relies heavily on the fact of her various diagnoses (Doc. 15 at 5-8, 11), diagnoses alone do not establish her inability to work. *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005).

The ALJ's findings represent specific, legally acceptable reasons to support his conclusion that the objective medical record undermined the credibility of

Plaintiff's testimony. (R. 18-19). As such, Plaintiff failed to meet her burden of providing sufficient evidence to support her allegations of disabling physical impairments. Substantial evidence supports the ALJ's conclusions. In short, the ALJ was not "clearly wrong" in discrediting the Plaintiff's testimony. *Werner*, 421 F. App'x at 939.

As to Dr. Awoniyi's opinion concerning Plaintiff's physical impairments, the ALJ gave it little weight because: (1) it was not supported by Dr. Awoniyi's treatment records; (2) it was contradicted by the findings of Dr. Pickett and Dr. Gill; and (3) it purported to express an opinion on an issue reserved to the Commissioner. (R. 19). The ALJ was correct as to each rationale.

First, Dr. Awoniyi treated Plaintiff on a monthly basis from 2013 through 2015. However, his treatment records consist largely of hand-written notes reciting Plaintiff's diagnoses, symptoms, and prescriptions. While Dr. Awoniyi referred Plaintiff to Dr. Pickett for a surgery consultation, Dr. Pickett returned essentially normal findings and suggested pain management and physical therapy in lieu of surgery. A treating physician's opinion may be disregarded if it is unsupported by objective medical evidence or is merely conclusory. *McSwain*, 814 F.2d at 619; *Lewis*, 125 F.3d at 1440; *Hudson v. Heckler*, 755 F.2d 781, 784 (11th Cir. 1985) (treating physician's opinion properly rejected where it is "so brief and conclusory that it lacks persuasive weight"). The ALJ was correct in

concluding Dr. Awoniyi's opinion was not supported by his own treatment records. The ALJ did not err in rejecting Dr. Awoniyi's brief and conclusory opinion.

Next, the ALJ accurately noted the level of disability described in Dr. Awoniyi's opinion was contradicted by the essentially normal findings of Dr. Pickett and Dr. Gill. This provides a sound basis—supported by substantial evidence—on which to reject Dr. Awoniyi's opinion. *See Fries v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 833-34 (11th Cir. 2006) (ALJ had good cause for discounting treating physician's opinion in favor of one-time examiners' opinions that were consistent with the medical record).

Finally, the ALJ was correct in noting that Dr. Awoniyi's opinion encroached on the Commissioner's duty to determine disability. Whether Plaintiff was able to work is an issue reserved to the Commissioner. SSR 96-5p.

## IV.    CONCLUSION

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 23rd day of March, 2018.

Staci G. Cornelius
STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE